**MIDPOINT REALTY CO., Inc., v. UNITED STATES.**

**No. 43130.**

Court of Claims.

Decided Jan. 8, 1940.

694

vord & Alvord, of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred. K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WHITAKER, Judge.

It is not controverted that the plaintiff overpaid its taxes for 1924 in the amount of $9,215.62. Of this amount $3,837.77 has been refunded, but the defendant denies liability for the balance on the ground that a timely claim for the refund thereof was not filed. Payments were made as follows: $4,000 on March 13, 1925; $3,677.78 on June 15, 1925; $3,840 on September 14, 1925, and $3,837.77 on December 10, 1925. To entitle plaintiff to recover, a claim for refund thereof must have been filed within four years from the date of payment, unless plaintiff's alternative position, later discussed, is correct. Section 284(b) of the Revenue Act of 1926, 44 Stat. 66.

The plaintiff says a certain affidavit made by the Secretary of the Salmon Realty Corporation, plaintiff's parent corporation, on July 29, 1927, set out in finding 4, was such a claim. If this be true, plaintiff is entitled to recover, because this was well within time; but it seems obvious to us this was not a claim for refund. It merely stated that the Salmon Realty Corporation owned at least ninety-five percent of the voting stock of certain corporations, including the Midpoint Realty Company, that the Midpoint Realty Company had not been included in the consolidated return through a misunderstanding, and that they were preparing a revised statement including it. There was not even a suggestion that this revised statement would show an over-payment of tax, much less a demand for a refund.

There was no written claim for refund filed until the letter from the Salmon Realty Corporation on October 11, 1929. (For letter see finding 9.) This was written more than four years after all the payments were made, save that on December 10, 1925. This payment made on December 10, 1925, has been refunded, as stated above.

Ellsworth C. Alvord and Floyd F. Toomey, both of Washington, D. C. (Al-

It follows that plaintiff is not entitled to recover the other payments made,

unless it is correct in saying that the Commissioner's letter of September 9, 1929, amounts to an account stated, this suit having been filed exactly six years after the date of this letter.

Previously, on July 19, 1929, the Commissioner of Internal Revenue wrote the Salmon Realty ₁Corporation, plaintiff's parent corporation, a letter stating the "corrected tax liability" of all the companies to be $199,391.97, the "tax previously assessed," $228,300.48, and the overassessment, $28,908.51. He stated the "correct tax liability" of the Midpoint Realty Company to be $6,139.93, the "tax previously assessed" to be $15,355.55, and the overassessment to be $9,215.62. Upon examination of the Commissioner's figures, the Salmon Realty Corporation, acting for itself and others, including plaintiff, agreed on the aggregate overassessment, but disagreed with the Commissioner's statement of the "correct tax liability" and the "tax previously assessed" as to certain corporations other than plaintiff. It was thought that each had been understated by the same amount, so that when they should be revised the overassessment would remain the same.

In order to have these errors corrected, representatives of the plaintiff had a conference with the Commissioner's representatives on August 8, 1929, at which time the alleged errors were pointed out. Following that conference the Commissioner wrote the Salmon Realty Corporation on September 9, 1929, adopting plaintiff's figures. The letter of September 9, 1929, made no change in the "correct tax liability," the "tax previously assessed," or the overassessment of the Midpoint Realty Company.

The plaintiff says that on that date there was an account stated between the parties. We agree there was an account stated between them not later than that date. In fact, as to the plaintiff, we think there was an account stated on August 8, 1929, because on that date there was an agreement between them as to the account of the Midpoint Realty Company. Daube v. United States, 59 F.2d 842, 1 F.Supp. 771, 75 Ct.Cl. 633; Id., 289 U.S. 367, 53 S.Ct. 597, 77 L.Ed. 1261; Shipley Construction & Supply Company v. United States, 7 F. Supp. 492, 79 Ct.Cl., 736. From all the facts it is apparent that the Salmon Realty Corporation did not disagree with the Commissioner's figures as to the plaintiff company, as set out in his letter of July 19, 1929. The Commissioner's figures in his letters of July 19, 1929, and September 9, 1929, were identical as to it. The Commissioner was undoubtedly notified of this agreement at the conference on August 8, 1929.

It is true that after receipt of the Commissioner's letter of September 9, 1929, the Salmon Realty Corporation replied on October 11, 1929, enclosing the "Agreement as to Final Determination of Tax Liability," and that its letter enclosing the agreement stipulated that "this agreement is not to be in any way effective unless and until approved by the Secretary or Under Secretary in accordance with the provisions of the Revenue Act of 1928 * * *." This letter was written more than four years after all payments were made except the one in December; but this was not the first time the taxpayer had assented to the Commissioner's statement as to the Midpoint Realty Company. This, as we have said, was on August 8, 1929. This date was prior to the expiration of four years from the date of the payment of $3,840 on September 14, 1925.

▇ Nor can we say that the condition imposed by the letter of the Salmon Realty Corporation in its letter of October 11, 1929, that the agreement enclosed should not become effective until approved by the Secretary or the Under Secretary, prevented the account from becoming an account stated for lack of unequivocal acceptance by both parties. There was no disagreement as to the amount due the plaintiff, nor did the condition imposed express a disagreement as to the amount due. That condition related only to the circumstances under which section 606 of the Revenue Act of 1928, 26 U.S.C.A. § 1660, should become effective. That section made agreements between the taxpayer and the Commissioner, which were approved by the Secretary or the Under Secretary, final and conclusive, and prevented a reopening of the case for any cause by either the taxpayer or by the Government, except for fraud. Such an agreement is something more than an account stated, which may be reopened for mistake as well as fraud. We do not regard its execution as necessary to the consummation of an account stated. The essential elements thereof are an agreement between the parties on the statement of the account and a promise, express or implied, on the part of the debtor to pay the balance. There was

such an agreement on August 8, 1929, and the taxpayer's letter of October 11, 1929, in our opinion, did not withdraw its assent thereto. Certainly it affords no justification for the Commissioner to refuse to fulfill his implied promise to pay the balance due as set out in his letters of July 19, 1929, and September 9, 1929, a duty cast upon him by statute. Section 284 of the Revenue Act of 1926.

It results that the plaintiff is entitled to recover the sum of $3,840. Judgment will be entered accordingly. It is so ordered.