**BRAUN et al. v. UNITED STATES.**

No. 17749.

Court of Claims.

Oct. 5, 1942.

1000

Louis O. Bergh, of New York City (Walter G. Moyle, Ralph P. Wanlass, and Victor E. Cappa, all of Washington, D. C., on the brief), for plaintiffs.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

■■■ Section 151 of the Judicial Code, 28 U.S.C.A. § 257, under which the petition in this case was filed, pursuant to Senate Resolution 270 of June 7, 1938 (finding 13), provides, among other things, for a report by the court to the Senate of "the facts in the case and the amount, where the same can be liquidated * * *, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any, legally or equitably due from the United States to the claimant." Inasmuch as the claim presented by the petition was previously before the court and a decision and judgment were entered therein, the court does not now have authority or jurisdiction to enter judgment under the proviso of section 151 of the Judicial Code. Seaboard Air Line Ry. v. United States, 59 Ct.Cl. 250; Stockbridge Tribe of Indians v. United States, 63 Ct.Cl. 268; Pocono Pines Assembly Hotels Co. v. United States, 73 Ct.Cl. 447, 501. But we are required by the statute and the Senate Resolution to find the facts and state our conclusions thereon and certify the same to the Senate for such action as it may deem proper.

The question presented in the prior suit, 8 F.Supp. 860, 80 Ct.Cl. 211, and by the petition in this case, with respect to which the Senate has asked for a report of the facts and our conclusions, is whether, on the facts and as a matter of law, under the letter of March 10, 1927; plaintiffs' letter of March 25 (finding 6); and the Commissioner's action pursuant to his letter of March 10, there was rendered by the Commissioner to plaintiffs a statement of account showing a balance due them of $25,094.20 in such a way and under such circumstances as to give rise to an agreement or promise implied in fact under Section 145 of the Judicial Code, supra, to pay such balance.

Upon the stipulated facts presented, about which there is no dispute, it is shown that the executors in making the estate tax return included in the gross estate for the purpose of determining the value of the net estate subject to the estate tax certain proceeds of life insurance policies of $274,080, representing the amount of such policies in excess of the specific exemption of $40,000. These life insurance policies were taken out by the decedent, Herman W. Braun, on his own life and the beneficiaries thereof were the same as those which he had named and designated in the policies prior to February 24, 1919, the date of the enactment of the Revenue Act of 1918. All the policies, except the one mentioned in item 1 of finding 2 for $2,-345.60, expressly reserved to the decedent

the right to change the beneficiaries named therein. In respect to this policy, the insured on March 31, 1913, assigned all his right, title, and interest to his wife. No change in any of the beneficiaries was made by the decedent after February 24, 1919.

The estate tax due upon the net estate on the basis of this return was paid by the executors in the amounts of $79,672.84 November 18, 1920, and $2,313.80 January 23, 1923. Subsequently, in May 1925, the court decided the case of Lewellyn v. Frick et al., 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934, in which it was held that insurance proceeds received by beneficiaries under insurance policies on the life of a person dying December 2, 1919, after the passage of the Revenue Act of 1918, 40 Stat. 1057, but which were taken out by such person and the beneficiaries thereof designated prior to the enactment of the Revenue Act of 1918, were not includible in the gross estate for the purpose of determining the net estate subject to the transfer tax under section 402(f) of the Revenue Act of 1918, for the reason that that section did not apply and was not intended to apply retroactively to life-insurance policies such as were there involved. That decision was based wholly on nonretroactivity and on its facts it is applicable here. It has never been subsequently modified or changed by the Supreme Court insofar as concerns the taxability of insurance proceeds received by beneficiaries designated prior to the Revenue Act of 1918 under policies taken out prior to that Act and where the insured died without having changed the beneficiaries before the enactment of Section 302(h) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Code § 811(g, h). Section 302(h) of the Revenue Act of June 4, 1924, expressly made section 302(g) retroactive as to taxation of life-insurance proceeds, but the decedent in this case died May 24, 1919, the same year in which Frick died, and seven months earlier.

The question decided in Lewellyn v. Frick, et al., supra, was again considered and approved in Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, involving similar facts. The insured in the Bingham case died February 27, 1921.

In the case of Chase National Bank et al. v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388, the court held that the proceeds of certain life-insurance policies in which the insured designated the beneficiaries, and reserved the right to change the beneficiaries taken out by him upon his own life in September 1922 after the approval of the Revenue Act of 1921, were includible in the gross estate and subject to the estate tax for the reasons (1) that a transfer of the proceeds to the designated beneficiaries was made by the decedent subject to a power of revocation in him terminable at his death; (2) that the transfer was not complete until his death; (3) that the statutory provision taxing such proceeds was not unconstitutional and (4) that the taxing statute, effective November 21, 1921, as applied to transfers of insurance proceeds upon the insured's death April 10, 1924, was not retroactive, since the policies were taken out September 13, 1922. The Chase National Bank case is therefore clearly distinguishable from the Frick case.

The case of Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397 (decided on the same day as Chase National Bank) involved the question whether the value of certain property transferred in trust by a person who died May 30, 1922, should be included in the gross estate for the purpose of estate tax. Two of the seven trusts before the court were created in 1903 and 1910 in respect of certain property prior to the enactment of the Revenue Act of 1918. By these two trusts the income therefrom was reserved to the settlor for life and upon his death the income from the corpus of each trust was to be paid to a designated person until the termination of the trust as provided in the trust instrument, with remainders over. By the terms of each trust, there was reserved to the settlor alone the power of revocation of the trusts, upon the exercise of which the trustee was required to return the corpus of the trust to him. The power of revocation was never exercised. The remaining five trusts with respect to similar property were created in 1919 before the enactment of the Revenue Act of 1921, 42 Stat. 227, but after the enactment of the similar provisions of the estate tax of the Revenue Act of 1918. In these five trusts the settlor reserved to himself power to supervise the reinvestment of trust funds, to require the trustee to execute proxies to his nominee, to vote any shares of stock held by the trustee, and to control all leases executed by the trustee and to appoint the successor trustee. With respect to each of these trusts, a power was

also reserved to alter, change, or modify the trust, which was to be exercised in the case of four of them by the settlor and the single beneficiary of each trust, acting jointly, and in the case of the one remaining trust, by the settlor and a majority of the beneficiaries named, acting jointly. The settlor died without having modified any of the five trusts, except one, which modification was in a manner immaterial to the question presented.

In deciding the Reinecke case the court did not mention the case of Lewellyn v. Frick. As to the two trusts established in 1903 and 1910, prior to the enactment of the Revenue Act of 1918, the court held, at page 345 of 278 U.S., 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, that a transfer of property made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death, and that the provision of a taxing act subsequently enacted requiring inclusion of the value of such trust property in the gross estate as applied to the transfers of property there involved was not retroactive, since the death of the transferor followed the passage of the act.

The question presented in the Reinecke case arose under section 402(c), Revenue Act of 1918, an entirely different provision from subdivision (f) of the same section involved in the Frick case. Subdivision (c) relating to transfers of property in trust provided that there should be included in the gross estate the value at the time of death of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, * * * intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act) * * *." The court held the transfers of property in trust in 1903 and 1910 there being considered were taxable under 402(c) independently of the retroactive provision of the subsection, and said [278 U.S. 339, 49 S.Ct. 124, 73 L.Ed. 410, 66 A.L.R. 397]: "As to the two trusts, it is argued that since they were created long before the passage of any statute imposing an-estate tax the taxing statute if applied to them is unconstitutional and void, because retroactive, within the ruling of Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081. In that case it was held that the provisions of

the similar section 402 of the 1918 act, 40 Stat. 1097, making it applicable to trusts created before the passage of the act was in conflict with the Fifth Amendment of the Federal Constitution and void, as respects transfers completed before any such statute was enacted. But in * * * Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. [405, 63 A.L.R. 388], decided this day, the decision is rested on the ground, earlier suggested with respect to the Fourteenth Amendment in Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565, that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence section 402, as applied to the present transfers, is not retroactive since his death followed the passage of the statute. For that reason, stated more at length in our opinion in Chase National Bank v. United States, supra, we hold that the tax was rightly imposed on the transfers of the corpus of the two trusts and as to them the judgment of the court of appeals should be reversed."

The court therefore had no occasion in the Reinecke case to reconsider the Frick case and there is clearly no conflict between them.

As to the remaining five trusts in the Reinecke case, the court held that the value of the corpus thereof was not includible in the gross estate for the reason that the transferor could not effect any change in the beneficial interest in the trust without the consent of the beneficiaries whose interests were adverse, and that, for all practical purposes, each trust at the time created in 1919 had passed as completely from any control by the decedent which might inure to his own benefit as if the gift had been absolute.

We think the Reinecke, Chase National Bank, and Hallock cases are distinguishable on their facts from a case involving proceeds of insurance contracts such as were involved under the facts present in Lewellyn v. Frick, supra. See United States v. Eaton, 169 U.S. 331, 347, 348, 18 S.Ct. 374, 42 L.Ed. 767. The facts and principle of the Frick case are applicable to the case at bar. But if, for any reason, the principle announced in the Frick case is not distinguishable from that announced in the subsequent cases of Reinecke v. Northern Trust Co., supra; Chase National Bank et al. v. United States, supra, and Helvering v. Hallock, supra, the question of whether

the Frick case should be modified is one for the Supreme Court to decide.

The case of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 447, 84 L.Ed. 604, 125 A.L.R. 1368, involved certain transfers of property in trust. One of the trusts was created in 1907 and the other two were created in September and October 1919, respectively. The creators of the three trusts died in 1932, 1934, and 1930, respectively. The question before the court arose under the Revenue Act of 1926 as amended by the Revenue Act of 1932, and was whether the transfers of property made in trust under circumstances there disclosed were within the provisions of section 302(c) of that act, which section was substantially the same as 402(c) of the 1918 act. The question decided in Lewellyn v. Frick et al., supra, was not mentioned. The court held that "Section 302(c) deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment. * * * 'It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed.' Klein et al. v. United States, supra, 283 U.S. [231], at page 234, 51 S.Ct. [398], at page 399, 75 L.Ed. 996."

In Bailey v. United States, 31 F.Supp. 778, 90 Ct.Cl. 644, we held that the proceeds of life-insurance policies in excess of the specific exemption were includible in gross estates and subject to the estate tax as a part of the net estate where the policies were taken out by the decedent upon his own life after the effective date of the revenue acts taxing such proceeds even though, before his death, the insured had assigned such policies and surrendered the right to change the beneficiaries therein named because such policies contained a provision that the proceeds thereof should be payable to the executors, administrators, or assigns of the insured if he should survive the beneficiaries and assignees. Because the policies were taken out after the effective date of a revenue act taxing such proceeds, we held that the taxation of the proceeds was required by the decisions in Chase National Bank et al. v. United States, supra, and Helvering v. Hallock, supra.

■ The defendant's contention that the insurance proceeds involved in the case at bar were taxable (the insured having died May 24, 1919), cannot be sustained under Lewellyn v. Frick, supra, and such contention is not on the facts supported by Chase National Bank v. United States, supra; Reinecke v. Northern Trust Co., supra, or Helvering v. Hallock, supra.

We come back therefore to the account stated question growing out of the action of the Commissioner in this case on March 10, 1927.

The executors on November 10, 1925, filed a claim for refund of $27,408 on the ground that the insurance proceeds of $274,080 were not taxable as a part of the gross estate under the decision of May 11, 1925, in Lewellyn v. Frick, supra. On December 21, 1926, after this refund claim had been filed, the Commissioner with the approval of the Secretary of the Treasury promulgated Treasury Decision 3945 (C.B., V–2, p. 228), in which it was held that the proceeds of a life-insurance policy on the life of a person dying after the enactment of the Revenue Act of 1918 were not subject to estate tax where such policy was taken out and the beneficiary therein named prior to the enactment of the Revenue Act of 1918. Thereafter, on March 10, 1927, the Commissioner wrote the executors referring to their claim for refund and pointing out that all of the policies were taken out and the beneficiaries named therein before the passage of the Revenue Act of 1918 and that no change in beneficiaries had been made as to any of the policies since the effective date of that act, and stated: "In view of the provisions of Treasury Decision 3945, the Bureau finds that no part of the value of the above-mentioned policies is subject to inclusion in the taxable estate. Accordingly, the following adjustment is made."

Following this the Commissioner set forth a tabulation showing the adjusted gross estate, deductions, net estate, and the total tax as returned, determined, and adjusted—the last item in the tabulation being "Excess payment $27,408.00." (Finding 6.) Following this the Commissioner stated:

"However, section 3228 of the U. S. Revised Statutes as amended by section 1112 of the Revenue Act of 1926 provides that

all claims for the refunding of any internal revenue tax alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax. * * *

"Your claim for refund was filed November 10, 1925, and the amount refundable thereunder is limited to that portion of the tax paid within the above-mentioned four-year period.

"Accordingly, your claim for refund of $27,408 will be certified to the disbursing clerk of the Treasury Department for payment in the sum of $2,313.80, *and is rejected as to $25,094.20.*" [Italics ours.]

Later and before the Commissioner had taken any further action as to the $2,313.80, the executors, on March 25, wrote the Commissioner as follows in reply to his letter of March 10:

"We understand that with this certificate you will be in a position to certify the payment of the claim for $2,313.80 by way of refund.

"It is, of course, understood that acceptance of said amount does not preclude or prejudice the right of executors to contest the decision as to the rejection of the sum of $25,094.20 mentioned in your letter."

Thereafter, on April 9, 1927, the Commissioner signed a schedule of refunds, allowing and certifying for payment a refund to the executors in the amount of $2,313.80 with accrued interest, which amount, with interest, was paid by Treasury check dated April 18, 1927. Nothing further was done or said by either the Commissioner or plaintiffs until May 1932 when the estate instituted a suit in the District Court for the Southern District of New York against the United States to recover $25,094.20, which suit was dismissed by the court in December 1932 solely on the ground that the court was without jurisdiction to entertain the suit, because the amount of the claim exceeded $10,000. Thereafter, on January 17, 1933, the executors filed suit in this court for the same amount on an implied contract under section 145 of the Judicial Code, 28 U.S.C.A. § 250, on the basis of an alleged account stated by the Commissioner in his letter of March 10, 1927. This suit was dismissed November 5, 1934, as hereinbefore stated. (See finding 9.)

In the present proceeding it is our opinion that the Commissioner of Internal Revenue did not render an account stated as that term is known in law, showing a balance due the estate, in such manner and under such circumstances as to give rise to an agreement implied in fact within the jurisdiction of this court under sections 145 and 156 of the Judicial Code. Cf. United States v. Kreider Company, 313 U.S. 443, 61 S.Ct. 1007, 85 L.Ed. 1447. Instead the Commissioner expressly stated to the executors that their claim for $27,408 was allowable for payment only in the sum of $2,-313.80 and that the claim "is rejected as to $25,094.20." Plaintiffs did not accept such account as so stated but protested it in part. No promise or agreement implied in fact to pay the amount of $25,094.20 can be based upon or arise from this statement of the Commissioner. There was, to be sure, an admitted excess payment by the estate of $27,408, the whole of which, as a matter of law, it was entitled to receive as a refund at that time because as a matter of law the claim for refund had been timely filed under Section 3228, Revised Statutes, as amended by Section 1112, Revenue Act of 1926, as to the entire overpayment of $27,408. Hills v. United States, 50 F.2d 302, 73 Ct.Cl. 128; Id., 8 F.Supp. 849, 80 Ct.Cl. 41. And the Commissioner was authorized and directed by Section 3220, Revised Statutes, as amended by Section 1111 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 321, to make refund of the entire overpayment of $27,408. Hills v. United States, supra. The defendant now admits in this case that plaintiffs' claim for refund was timely filed as to the entire overpayment of $27,408 under the Hills case and the decisions of other courts on the same question. It may be said that there was a promise or agreement implied in law to pay the admitted overpayment balance of $25,094.20 in respect of which the Commissioner erroneously rejected the claim for refund. But this court does not have jurisdiction of agreements implied in law. Harley v. United States, 198 U.S. 229, 25 S.Ct. 634, 49 L.Ed. 1029; United States v. Buffalo Pitts Company, 234 U.S. 228, 34 S.Ct. 840, 58 L.Ed. 1290. As was said by the court in Eastern Extension, Australasia & China Telegraph Company, Limited, v. United States, 251 U.S. 355, 363, 40 S.Ct. 168, 170, 64 L.Ed. 305: "It is obvious that no express contract by the United States * * * can be made out from the findings of fact, and it is equally clear that such an implied contract, using the words in any strict sense, cannot be derived

from the findings, for it is plain that there is nothing in them tending to show that any official with power, express or implied, to commit that government to such a contract ever intended to so commit it. The contention of the claimant must be sustained, if at all, as a quasi contract, as an obligation imposed by law independent of intention on the part of any officials to bind the government, one which in equity and good conscience the government should discharge because of the conduct of its representatives in dealing with the subject-matter."

■ In the circumstances the only right of action as to the $25,094.20 which the estate had in this or other federal courts as a result of the Commissioner's action was a suit within two years under section 3226 of the Revised Statutes as amended by section 1113(a), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts page 324, upon the basis of the partial disallowance and rejection by the Commissioner of the claim for refund. The fact that the estate had, as a matter of fact and law, overpaid the tax in the amount of $27,408 under the decision of the Supreme Court in Lewellyn v. Frick, supra, does not entitle the estate to judgment or to payment of the claim unless Congress is willing to waive the failure of the estate to timely pursue the only remedy open to it.

Whether in equity and good conscience on the basis of a quasi-contract, that is, an obligation solely implied in law and not in fact, the plaintiffs should be paid the balance of the overpayment of $25,094.20 due them under the decision of the Supreme Court in Lewellyn v. Frick, supra, and which the Commissioner was, as a matter of law (Hills v. United States, 50 F.2d 302, 73 Ct.Cl. 128; Id., 8 F.Supp. 849, 80 Ct. Cl. 41; sections 3220 and 3228, Revised Statutes, as amended by sections 1111 and 1112 of the Revenue Act of 1926), authorized and directed to refund and should have refunded, upon the timely claim filed by the executors, is a matter solely for the decision of Congress.

■ No claim for a money judgment against the United States can be sustained or allowed by a court on an obligation under the contract provisions of section 145 of the Judicial Code under an obligation which is only implied in law. Tempel v. United States, 248 U.S. 121, 130, 131, 39 S.Ct. 56, 63 L.Ed. 162; Sutton v. United States, 256 U.S. 575, 580, 581, 41 S.Ct. 563, 65 L.Ed.

1099, 19 A.L.R. 403; Merritt v. United States, 267 U.S. 338, 340, 341, 45 S.Ct. 278, 69 L.Ed. 643; United States v. Minnesota Mutual Inv. Co., 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911; Morse Dry Dock Company v. United States, 77 Ct.Cl. 57, 73, 74. In Baltimore & Ohio Railroad Company v. United States, 261 U.S. 592, 597, 43 S.Ct. 425, 426, 67 L.Ed. 816, the court said: "The 'implied agreement' contemplated [by section 145 of the Judicial Code] as the basis of compensation is not an agreement 'implied in law', more aptly termed a constructive or quasi contract, where, by fiction of law, a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress, but an agreement 'implied in fact,' founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."

Good illustrations of an account stated giving rise to a promise or agreement implied in fact are Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018, and Midpoint Realty Co. v. United States, 30 F.Supp. 691, 90 Ct.Cl. 335; Id., 42 F.Supp. 76, 95 Ct.Cl. 63, 70, 71. In the Bonwit Teller case the Commissioner of Internal Revenue decided correctly that a document filed by the taxpayer was a sufficient claim for refund and he proceeded to render a statement of account showing a balance due to the taxpayer, which statement of account was accepted. Later the Commissioner, erroneously in fact, took the position, after the statutory period of limitation within which he could make payment without a claim had expired, that the claim was not sufficient. It was held that there had been rendered an account stated and that there had not been any mistake of fact or law in connection therewith such as would give the Government the right to avoid it.

In the Midpoint Realty Co. case the Commissioner and the taxpayer agreed on the amount of the overpayment well within the period of limitation and also within such period the Commissioner rendered to the taxpayer a statement of account showing the balance due with the statement that the same would be refunded or credited, which statement was accepted by the taxpayer—all well within the period of limitation as to payment. The Commissioner delayed in making payment and after the

period of limitation had expired declined to pay the balance theretofore agreed upon. The account as stated was admitted to be correct in fact and in law, and no mistake of fact or law in the statement of the account was alleged.

The facts in the instant case clearly do not bring it within the decisions in those cases so as to authorize the court to enter judgment for the overpayment under the proviso of Section 151 Judicial Code.

The foregoing findings of fact, conclusion of law, and this opinion will be certified to the Senate in accordance with Senate Resolution No. 270. It is so ordered.