### BODELL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3841.

Circuit Court of Appeals, First Circuit.

Nov. 3, 1943.

Richard F. Canning and Ira Lloyd Letts, both of Providence, R. I. (Andrew P. Quinn, of Providence, R. I., on the brief), for petitioner for review.

Joseph M. Jones, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner.

Before MAHONEY, and WOODBURY, Circuit Judges, and SWEENEY, District Judge.

MAHONEY, Circuit Judge.

The question in this case is whether the proceeds of certain insurance policies should be included in the gross estate of the decedent for federal estate tax purposes. The decedent, Frederick Bodell, took out eight policies of insurance on his life on account of which $120,260.07 was paid on his death. He died on June 20, 1938, with his wife, Albina Elise Bodell, surviving him. His executor, Joseph J. Bodell, the petitioner herein, included no part of these proceeds in the decedent's estate tax return.

The Board of Tax Appeals (now The Tax Court of the United States) sustained the determination of the Commissioner of Internal Revenue that all of the proceeds in excess of the $40,000 exemption should be included in the decedent's gross estate.

The petitioner has appealed from the decision of the Board on only two of the policies. Policy No. 178772, Provident Mutual Life Insurance Company of Philadelphia, was an endowment policy for $5000 taken out by the decedent on October 31, 1911, payable to him on October 31, 1955, if living; otherwise to his mother, if living; otherwise to his estate. The decedent's wife was irrevocably named beneficiary in place of his mother on May 6, 1918. All the premiums on the policy were paid by the decedent. Policy No. 398704, Massachusetts Mutual Life Insurance Company, was an ordinary life policy for $10,000 taken out by decedent March 1, 1917, originally payable to the mother of the decedent. On October 6, 1917, the beneficiary was changed and the policy was made payable to the decedent's wife, if living at his death; otherwise to his estate. The right to change the beneficiary at any time was reserved by the decedent. He paid all the premiums on this policy.

By stipulation since the taking of the appeal it has been agreed by the parties that the sole contention of the petitioner is that the proceeds of these two policies should not be included in the gross estate of the decedent on the ground that they were taken out prior to the effective date of the Revenue Act of 1918, 40 Stat. 1057, and that the decedent exercised no rights under the policies subsequent to that date. The petitioner has abandoned the contention that if any part of the proceeds are includible in the gross estate, only the value of the decedent's interest therein is includible. Therefore that question is not before this court.

The applicable statute is the Revenue Act of 1926, Ch. 27, 44 Stat. 9, as amended by § 404 of the Revenue Act of 1934, Ch. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, pages 227, 231:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \*

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

"(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act."

Treasury Regulations 80, 1937 ed., provide:

"Article 25. Taxable insurance. * * * Insurance is considered to have been taken out by the decedent, whether or not he made the application, if he acquired the ownership of, or any legal incident thereof in, the policy; * * * Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc."[1]

Article 27 recites that the proceeds in excess of $40,000 should be included in the gross estate "regardless of when the policy was or the policies were issued."

In contending that the policies are not includible in the gross estate by reason of the fact that they were taken out prior to the effective date of the Revenue Act of 1918, the taxpayer relies on three cases: Lewellyn v. Frick, 1925, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934; Bingham v. United States, 1935, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, and Industrial Trust Co. v. United States, 1935, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. 191.

The proceeds of life insurance policies were first made a part of the gross estate by § 402(f) of the 1918 Act, 40 Stat. 1057, 1098, which became effective on February 24, 1919. Section 302(g) of the 1926 Act, as amended, is identical with § 402(f) of the 1918 Act. The facts in Lewellyn v. Frick, supra, show that the policies had been taken out before the 1918 Act. Some of the policies had been irrevocably assigned before the Act was passed. In others the right was reserved to revoke the assignment. At the date of the insured's death, there was no clause in the statute making the insurance provision expressly applicable to the proceeds of policies taken out before its enactment and the court refused to apply the statute to a case which arose before its passage.

In Bingham v. United States, supra, the policies were taken out before 1918, made irrevocably payable to the named beneficiaries and the insured retained a possibility of reverter so that if the beneficiaries predeceased him the proceeds would be payable to his estate. Here also, the insured died before the enactment of the clause in the statute making the insurance provisions expressly applicable to pre-1918 policies. There were two grounds of decision. For its first ground, the court relied on the Frick case with its grave constitutional doubts if the Act were construed to apply to policies taken out before 1918. For its second ground, the court held that the retention of a possibility of reverter was not sufficient basis for taxing the policies, citing Helvering v. St. Louis Union Trust Co., 1935, 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 1935, 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, and said at page 219 of 296 U.S., at page 181 of 56 S.Ct., 80 L.Ed. 160:

" * * * Those principles establish that the title and possession of the beneficiary were fixed by the terms of the policies and assignments thereof, beyond the power of the insured to affect, many years before the act here in question was passed. No interest passed to the beneficiary as the result of the death of the insured. His

---

[1] Treasury Regulations 80, 1937 ed., as amended by T.D. 5032, 1941–1 Cum.Bull. 427, added the following sentence: "The insured possesses a legal incident of ownership if his death is necessary to terminate his interest in the insurance, as, for example, if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary pre-decease him." Article 25 of the 1934 edition of Regulations 80 had previously included a similar provision, but it was eliminated in 1937 by T.D. 4729, 1937–1 Cum.Bull. 284. We think it proper to include the possibility of reverter as an incident of ownership under the 1937 edition of the Regulations.

556

death merely put an end to the possibility that the predecease of his wife would give a different direction to the payment of the policies."

In Industrial Trust Co. v. United States, supra, the facts were like those in the Bingham case but the insured died subsequent to the enactment of the Revenue Act of 1924, which introduced § 302(h), 26 U.S.C.A. Int.Rev.Acts, page 68. Although this section specifically referred to § 302(g), the court doubted whether it was applicable to insurance receivable by a beneficiary other than the executor and refused so to construe it for fear of the grave constitutional doubts in the Bingham case.

We think that the Supreme Court has indicated by Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, and United States v. Jacobs, 1939, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763, that the Bingham case is no longer to be followed. In the case before us the insured, in addition to paying all the premiums on the policies, retained in each of them the right of his estate to receive the proceeds should he survive the named beneficiary. Helvering v. Hallock, supra, held that the retention of such a possibility of reverter in the case of a transfer in trust was sufficient to include the trust property in the decedent's gross estate. It was there decided that the crucial taxable transfer is not the technical conveyance of title, but rather the transfer of economic interests which only occurs when the settlor dies; only then is the beneficiary sure of his interest. The beneficiary gets nothing unless and until the settlor predeceases him. It is then that the settlor's string on the policy is cut. That case arose under § 302(c), Revenue Act 1926, as amended by Revenue Act 1932, § 803, 26 U.S.C.A. Int.Rev.Code § 811(c), but its reasoning is equally applicable to § 302(g). Commissioner v. Washer, 6 Cir., 1942, 127 F.2d 446, certiorari denied 317 U.S. 653, 63 S.Ct. 48, 87 L.Ed. ——; Chase National Bank v. United States, 2 Cir., 1940, 116 F.2d 625; Bailey v. United States, 1940, 31 F.Supp. 778, 90 Ct.Cl. 644. It also expressly overruled the St. Louis Union Trust cases relied upon in the second part of the Bingham case. Thus the Hallock case removes the second ground of the Bingham decision that the retention of a possibility of reverter under an insurance policy is not a sufficient incident of owner-

ship to impose a tax. Chase National Bank v. United States, supra; Bailey v. United States, supra; Estate of Cain v. Com'r of Int. Rev., 1941, 43 B.T.A. 1133. See Paul, Federal Estate and Gift Taxation, 1942, p. 540, § 10.20.

In United States v. Jacobs, supra, real estate was conveyed to the decedent and his wife as joint tenants in 1909. The wife never contributed any part of, or consideration for, the joint property. Section 302(h) was in effect at the decedent's death. The court held that the entire value of the joint estate was properly and constitutionally includible in the decedent's gross estate. In response to the taxpayer's argument that a one-half interest in the joint property was transferred to and vested in the wife in 1909 and could not thereafter be taxed as a part of decedent's gross estate without retroactively and unconstitutionally applying the tax to the 1909 transfer, the court said, pages 366, 367, 368, of 306 U.S., page 553 of 59 S.Ct., 83 L.Ed. 763:

"But the tax was not levied on the 1909 transfer and was not retroactive. At decedent's death in 1924, ownership and beneficial rights in the property which had existed in both tenants jointly changed into the single ownership of the survivor. This change in ownership, attributable to the special character of joint tenancies, was made the occasion for an excise, to be measured by the value of the property in which the change of ownership occurred. Had the tenancy not been created, this survivorship and change of ownership would not have taken place, but the tax does not operate retroactively merely because some of the facts or conditions upon which its application depends came into being prior to the enactment of the tax." The decedent's death "became the 'generating source' of important and definite accessions to the property rights of the other."

The decedent's death ripened into full bloom the survivor's rights in the property. The dissenting opinion followed the earlier reasoning of the Bingham case. The constitutional issue in the case before us is the same as that in the Jacobs case. We believe that United States v. Jacobs with its reasoning which is the same as that of the Hallock case indicates that the first ground of the Bingham case is no longer law. As Paul in his book on Federal Estate and Gift Taxation says, p. 497, § 10.06:

"Any such constitutional qualms have been completely dispelled by the holding in United States v. Jacobs that section 811 (h) [302(h) here] may be applied in taxing the full value of a joint tenancy, the creation of which antedated the federal estate tax. The rationale of this case is equally applicable to pre-1918 insurance policies, assuming that an incident of ownership, a possibility of reverter, or the payment of premiums brings the policy within the ordinary ambit of subdivision (g)."

Cf. Commissioner v. Washer, supra; Estate of Cain v. Com'r of Int.Rev., supra. The Board of Tax Appeals in its opinion in the instant case says that insofar as Estate of Thompson v. Com'r of Int.Rev., 1940, 41 B.T.A. 901, is contrary, it will no longer be followed.[2]

The taxpayer attempts to distinguish the Jacobs case on the ground that a different class of property was there involved. He says that after the passage of the Act the joint tenants might have terminated their joint tenancy and restored the status quo, whereas that would have been impossible without substantial loss in the case of insurance. In Porter v. Commissioner, 1933, 288 U.S. 436, 53 S.Ct. 451, 454, 77 L.Ed. 880, however, there was no possibility whatever of returning to the status quo or of so escaping the tax even at substantial loss. The taxpayer there had transferred his property in an irrevocable trust before the enactment of the applicable subsection of the Act. He reserved the power to alter or modify the terms of the trust but could make no change in favor of himself. The court found it sufficient that his death terminated his control and was "in respect of title to the property in question, the source of valuable assurances passing from the dead to the living."

With the constitutional doubts of the Bingham case thus dispelled, it seems that the construction of § 302(h) by the Supreme Court in the Industrial Trust Company case should no longer be controlling. See Paul, supra, p. 495, footnote 17, and p. 497. The plain language of § 302(h) makes § 302(g) applicable to pre-1918 policies. It is to be noted that in sustaining the imposition of the tax we place no reliance on the endowment feature of one of the policies.

From the reasoning in the Jacobs and Hallock cases it is also clear that the retention by the insured of the power to change the beneficiary in and of itself would make the proceeds on policy No. 398704 taxable. Commissioner v. Washer, supra; Broderick v. Keefe, 1 Cir., 1940, 112 F.2d 293; cf. Keefe v. United States, 1942, 46 F.Supp. 1016, 97 Ct.Cl. 576, certiorari denied 318 U.S. 768, 63 S.Ct. 759, 87 L.Ed. ——, with which compare Braun v. United States, 1942, 46 F.Supp. 993, 98 Ct.Cl. 176, where the insured died in 1919, before the enactment of § 302(h). See Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397. As the Supreme Court said in Chase National Bank v. United States, 1929, 278 U.S. 327, 338, 339, 49 S.Ct. 126, 129, 73 L.Ed. 405, 63 A.L.R. 388, concerning policies taken out after 1918:

"Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax. * * * It is the termination of the power of disposition of the policies by decedent at death which operates as an effective transfer and is subjected to the tax * * *."

Since the taxable transfer is the maturing of the beneficiary's economic interests in the policy by the death of the insured, the exercise or failure to exercise the right to change the beneficiary after 1918 is immaterial.

The decision of the Board of Tax Appeals is affirmed.

---

[2] In Lang v. Commissioner, 1938, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319, some of the policies had been taken out before 1918, as was pointed out in defendant's brief in that case. The court included proceeds of these policies making no reference to the date of their issue.