## WOODFIN v. NEAL et al.

Middle Section. January 30, 1933.

Petition for Certiorari denied by Supreme Court, May 20, 1933.

Turner & Haston, of McMinnville, for appellants.

G. S. Ridley and J. T. Woodfin, Jr., both of Murfreesboro, for appellee Sam M. Neal.

CROWNOVER, J.  J. T. Woodfin, Sr., administrator of the estate of Hubert Lowrey, deceased, filed a bill of interpleader, asking the court to determine the rights of claimants to the proceeds of a policy of life insurance, whether it should be paid to "Sam M. Neal, employer, as his interest may appear," under the policy, or to the distributees of the estate of said Hubert Lowrey, under the laws of distribution of the state of Tennessee.

Sam M. Neal filed an answer and cross-bill, asserting that he had acted in loco parentis to Hubert Lowrey for six years and therefore had an insurable interest in his life, and he asked that the proceeds of the insurance be decreed to him.

James Lowrey and wife, Belle Lowrey, answered, claiming the proceeds as father and mother of Hubert Lowrey.

Sam M. Neal filed an amended answer and cross-bill charging that the words "as his interest may appear" were surplusage and should be stricken by the court from the policy; that through fraud, inadvertence, or mistake these words were added to the policy; that the policy did not conform to the contract made by Hubert Lowrey.

He prayed that the Great Southern Life Insurance Company be made a party to this suit; and that the policy be reformed to be made payable to Sam M. Neal. Cross-complainant Neal was permitted to amend his cross-bill so as to further allege:

"The application was altered by said Insurance Company or its agents and the policy issued accordingly without the knowledge or consent of the deceased, Hubert Lowrey, and such alteration is fraudulent."

Defendants Lowrey demurred to the amended and supplemental cross-bill and also answered same.

Decree for interpleader was entered, but the fund was left in the hands of the administrator.

Pro confesso taken against the Great Southern Insurance Company.

The chancellor sustained the cross-bill of appellee, Neal, reformed the policy, and awarded the proceeds of the policy of insurance to Neal.

Defendants James and Belle Lowrey excepted to said decree and appealed to this court, and have assigned five errors, all of which taken together, raise the proposition that there was no evidence to support the decree.

Hubert Lowrey was sixteen or seventeen years of age in 1924. His father was a tenant on the lands of Sam M. Neal. Following a disagreement with his father, Hubert Lowrey went to live with Sam M. Neal, where he lived for about six years, until his death in 1930.

He was not married and had no children at the time of his death, and died intestate.

Neal treated him as a son. He worked for Neal, doing farming and any necessary work, and later he worked on the highways, driving a team for Neal. In addition to supporting and clothing him, Neal gave him some money.

The boy was illiterate and unable to read or write.

In 1927 he obtained a policy of life insurance in the sum of $2,000, designating Neal as the beneficiary.

In September, 1930, he signed an application for a policy of life insurance of $3,000 in the Great Southern Life Insurance Company, instructing the insurance agent to make the same payable to "Sam M. Neal, employer." The designation of beneficiary in the application read as follows:

"Beneficiary's Name in Full Sam M. Neal, employer.

"Relationship to Applicant None, has lived with him since child."

The application was signed by Hubert Lowrey's mark.

On August 11, 1930, the insurance company wrote their local agent as follows:

"We are in receipt of the above application and note the beneficiary named is Sam M. Neal, employer. Unless the applicant is in some

way indebted to this man, we do not see where he has an insurable interest in his life, and would prefer, if possible, to make the policy, if issued, payable to the estate of the applicant. Please advise by return mail if this will be satisfactory.''

On August 15, 1930, the company instructed the agent to have a medical examination made of Hubert Lowrey. A medical examination was made and a second application was forwarded to the insurance company, in which ''Sam M. Neal, employer,'' was named as beneficiary.

The policy was issued by the insurance company and sent to the local agent, who delivered it to Lowrey. The policy was delivered to Lowrey on the morning of September 20, 1930, as he was starting to the woods to haul logs. Lowrey made a payment and executed a note for the rest of the premium. He carried the policy into the house and put it in a trunk and immediately came out and got on the wagon and left for the woods. Several hours later, Neal and Hubert Lowrey had loaded a wagonload of logs; when Lowrey went to fasten a chain around the logs, one rolled off and struck him, breaking his neck.

After his death the insurance company refused to pay the amount of the policy except to his administrator.

It developed that the policy contained the words, ''as his interest may appear,'' after ''Sam M. Neal, employer.'' The second application, when introduced at the trial, contained the same words, written in handwriting after the typewritten words, ''Sam M. Neal, employer.''

The insurance agent, the examining physician, and Paul H. Hartmen, who accompanied the insurance agent, all testified that these words were not in the application when it was read over to Lowrey. This was all the testimony on the subject.

The only question involved in this cause is whether or not Sam M. Neal is entitled to a reformation of the policy of insurance so as to change the beneficiary from ''Sam M. Neal, employer, as his interest may appear,'' to ''Sam M. Neal, employer.''

There was no reason why young Lowrey should not have made his insurance payable to Neal if he so desired. One may take out a policy of insurance on his own life and make it payable to whom he will, and it is not necessary that the beneficiary named should have an insurable interest. Clement v. Insurance Co., 101 Tenn., 36, 46 S. W., 561, 42 L. R. A., 247, 70 Am. St. Rep., 650; 1 Couch on Insurance, 772, section 295; 2 Cooley's Briefs on Insurance (2 Ed.), 1298, 1299; 3 Amer. & Eng. Ency. of Law (2 Ed.), 959.

''The petition for reformation of the policy should set forth fully and precisely the contract or agreement as those to be bound by it made and understood it, so that it may be seen in what the mistake consists. In fact, the petition or complaint should distinctly allege what the original agreement was, and point out with clearness and

precision wherein there was a misunderstanding, and that such mistake was mutual and did not arise from the negligence of the plaintiff, or that his misconception originated in the fraud of the defendant. And, in order to justify the reformation, the agreement of the parties must be fully established, since even a court of equity will not make a contract. And if mistake is the ground relied upon, it must have been either a mutual one,—that is, one made by both parties in so writing out the contract as to make them appear to have entered into a contract which they have not entered into,—or it must be a mistake of one party in connection with the fraud of the other in taking advantage of the mistake, although mutuality of mistake is not necessary, where the mistake is due to a clerical error of the scrivener, in which event relief may be had at the suit of either party, since the scrivener's negligence is not attributable to either party, even though he was the agent of the insurer." 6 Couch's Cyc. of Insurance Law, 4984, 4985, section 1391; 2 Cooley's Brief's on Insurance (2 Ed.), 1476.

"It may be stated as an established rule that policies of insurance, like other written instruments, will be reformed by equity, so as to conform to the intention of the parties, in cases of mutual mistake, and also where there is a mistake on one side and fraud on the other." 2 Cooley's Briefs on Insurance (2 Ed.), 1416; Phillips v. North River Ins. Co., 14 Tenn. App., 356; Walker v. Walker, 2 Tenn. App., 279; Tennessee Valley Iron & Railroad v. Patterson, 158 Tenn., 429, 14 S. W. (2d), 726.

A policy of insurance may be reformed after loss, although the insured could have discovered the mistake by reading the policy. 6 Couch's Cyc. of Insurance Law, 5011, 5012, section 1403.

"Neglect upon the part of the insured to read his policy does not always prevent reformation, at least, reformation is not necessarily precluded by the fact that he has held the policy for some time without reading it, since acceptance by insured in the erroneous belief, held in good faith, that it conforms to the agreement made, does not prevent reformation, and to hold otherwise would permit the insurer to take advantage of its own wrong, or of a mutual mistake. Furthermore, it is well settled that acceptance of a policy, without negligence, does not preclude reformation." 6 Couch's Cyc. of Insurance Law, 4987, 4988, section 1391.

The beneficiary may have a policy reformed where an illiterate applicant relied on the agent and failed to have his policy read. 6 Couch's Cyc. of Insurance Law, 5011-5013, section 1403.

"If a policy is made out in a different name from that of the person whom it was intended to insure, equity will correct the mistake, provided other elements essential to reformation in equity are present." 6 Couch's Cyc. of Ins. Law, 4996, section 1395.

"Where the company's agent agrees to insure for the benefit and protection of the applicant or owner, and the consideration is paid,

but the policy, as written by the agent, does not conform to the agreement, the policy will be reformed to express the real contract." 6 Couch's Cyc. of Insurance Law, 5000, section 1395.

"But where it was understood both by the member and the secretary of the association, at the time of the issuance of a benefit certificate, that the name of a certain person should be inserted in the certificate as beneficiary, but by mistake the name of the beneficiary was omitted, it was held that the certificate might be reformed after the death of the member by inserting the name of the beneficiary." 6 Couch's Cyc. of Insurance Law, 5002, section 1396.

"The weight of authority favors the proposition that the issuance of the policy or the preparation of the application with a clause varying from the intention of the parties will itself entitle the insured to a reformation, though the mistake could have been discovered by a perusal of the contract itself." 2 Cooley's Briefs on Insurance (2 Ed.), 1446.

Of course, it is the duty of the insured to examine the policy received, and, if it does not contain the contract agreed upon, to take steps to correct it; but he has a reasonable time within which to take such steps. 6 Couch's Cyc. of Ins. Law, 4988-4990, section 1391.

"A policy will be reformed to express the actual contract made with the agent in obtaining the insurance, although such contract differs from the expressed terms of the policy, and notwithstanding it is provided that agents have no authority to make, alter, or discharge contracts." 6 Couch's Cyc. of Ins. Law, 4991, 4992, section 1392.

The company is responsible for fraud or mistake of its general agent in making out a policy, he being intrusted with power in that regard. 2 Cooley's Briefs on Insurance (2 Ed.), 1455-1561.

The clause "as his interest may appear" has reference to debts. See 5 Couch's Cyc. of Ins. Law, section 1215. If Neal had been a creditor of Lowrey's, such a clause would have had meaning; but there is no suggestion in the record that he was a creditor.

The record shows that this was an unauthorized alteration of the contract. The evidence shows that the words, "as his interest may appear," were added in the office of the insurance company without the knowledge or consent of the insured, and that he accepted the policy without notice of the change, which was a violation of his confidence; hence he was imposed upon, and the beneficiary has a right to a reformation of the policy and to a decree for the proceeds in the same suit instituted after the death of the insured. 6 Couch's Cyc. on Insurance Law, section 1403; 2 Cooley's Briefs on Insurance (2 Ed.), 1467. It is hard to conceive of a worse imposition than to change the application of an illerate insured so as to entirely change the rights of the beneficiary without the knowledge and consent of the insured, and to then deliver the policy to him without drawing his attention to the change of the beneficiary, and collect

the premium. This was a fraud against the insurer and the beneficiary.

"When there is a mistake on one side, if it is not mutual, in order to be ground for reformation, the fraud of the other party must be clearly shown. Fraud, to be the basis of reformation of the instrument, must be fraud at the time of the execution thereof, and may be actual or constructive. There must be some relation of trust or confidence between the parties, or the means of knowledge as to the terms and conditions of the writings be not equally open and accessible to both parties. Inequitable conduct, to warrant relief by way of reformation has been held to consist in doing acts, or omitting to do acts, which the court finds to be unconscionable; as, in taking advantage by one party of the other party's illiteracy, in abusing confidence, in concealing what of right should have been disclosed, in drafting or having drafted an instrument contrary to the previous understanding of the parties and permitting the other party to sign it without informing him thereof, inducing the other party to believe the instrument other than it actually is, in failing to inform the other party that a deed has been changed since it was read to her, or inserting reservations not agreed on, in inserting in a deed by design a clause assuming existing encumbrances when the agreement was to take subject to, in failing to point out to a person with no understanding of technical descriptions the land covered in a deed conveying by metes and bounds, in altering an instrument, after its delivery, without the knowledge or consent of the other party, or in taking advantage of a mistake of the other party, known or suspected at the time, or the result of importunity. Fraud does not exist where the instrument has been executed by both parties with full knowledge of its contents and all the facts and circumstances surrounding the same, nor will the failure of a defendant to point out the omission of a provision in the instrument which was drawn by the complainant's attorney authorize reformation. That parties who executed an agreement without being aware that it omitted a certain clause, were hurried into executing it, does not authorize its reformation. Equity will interpose, where not to correct would be to perpetrate a fraud on the other party." 53 C. J., 950-952, section 66.

Appellant insists that the allegations of the cross-bill are insufficient for a reformation, in that, it does not set out the facts and circumstances, and that there is no evidence to support a decree for reformation. The allegations of the cross-bill and the evidence to support it are as hereinabove briefly stated, which we think are sufficient.

It is insisted that the company never agreed to write the policy payable to "Sam M. Neal, employer," other than "as his interest may appear," and therefore the minds of the parties never met; that the application is merely an offer, which is not binding until accepted by the issuance of a policy; and that the company has a right to reject

the application and write a policy with entirely different terms and conditions, which is a counter proposition, and if accepted by the insured he is bound by its terms.

This is ordinarily true, and a court will not decree a reformation of a contract unless there was a preliminary agreement, and the minds of the parties have met. The court will not make a new contract or declare one that the parties should have made. 53 C. J., 924; 6 R. C. L., 599; 23 R. C. L., 311.

Insurance is effected by an offer and acceptance, that is, by an application and acceptance by the issuance of the policy, or by the issuance of a policy accepted by the insured. 32 C. J., 1102, sections 187, 188. The issuance of a policy with terms different from those of the application is a counter proposition, which if accepted by the insured becomes a binding contract subject to all its terms. 32 C. J., 1103 and 1105, section 189; 37 C. J., 378. It becomes a binding contract in the absence of fraud or mistake, and the insured is presumed to have agreed to all its terms. 32 C. J., 1129, section 233.

But insurance contracts are like other contracts of offer and acceptance. Where one makes an offer, another has no right to notify him that it has accepted the offer and then place limitations and conditions in the contract without notifying him of them, and if he does it by materially altering the terms of the written offer which he accepts as altered, this is a fraud on the offerer which equity will remedy by decreeing a reformation. This constitutes a fraud that will warrant reformation as hereinabove set out.

Hence all of the assignments of errors must be overruled and the decree of the chancellor will be affirmed. Sam M. Neal will recover the balance of the proceeds of the policy less the costs and fees as decreed by the chancellor, and the cause will be remanded to the chancery court of Rutherford county for the disposition of the fund under proper orders of the chancellor in accordance with this opinion. The cost of the appeal is adjudged against appellants James Lowrey and his wife, Belle Lowrey, but the cost that accrued in the lower court will be paid out of the fund as decreed by the chancellor.

Faw, P. J., and DeWitt, J., concur.