**SCHONGALLA v. HICKEY, Collector of Internal Revenue.**

No. 221.

Circuit Court of Appeals, Second Circuit.

May 2, 1945.

Edward. A. Alexander, of New York City (John A. Klett, of New York City, of counsel), for appellant.

Samuel O. Clark, Jr. Asst. Atty. Gen., Sewall Key, A. F. Prescott, Leon F. Cooper, and Newton K. Fox, Sp. Assts. to Atty. Gen., and Irving J. Higbee, U. S. Atty., of Syracuse, N. Y., for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Decision of this appeal turns on whether or not the proceeds of four life insurance policies upon the life of William Schongalla, who died January 12, 1938, should be included in his gross estate for estate tax purposes under section 302(g) of the Revenue Act of 1926 as amended, Int.Rev.Code § 811(g), 26 U.S.C.A. Int.Rev.Code, § 811 (g), and the applicable Treasury Regulations, 80 Treas.Reg. Arts. 25, 27. The executrix of the insured paid an additional estate tax based on the inclusion of such proceeds in the estate. Her claim for refund thereof having been disallowed she brought this action and from an adverse judgment has appealed.

In addition to other life insurance policies, aggregating more than $40,000, payable to beneficiaries other than the insured's estate, there were in force at the time of his death the four policies involved in this litigation. Two of them were issued by Union Central Life Insurance Company and it is with respect to them that the main controversy arises. They were dated May 20, 1924 and were identical in terms except that one named as the beneficiary the insured's son William, Jr. and the other his son Edward. These boys were then only five and four years of age, respectively. They both survived their father and were still minors at the date of his death. As originally issued each policy called for the payment of $30,000 to the named beneficiary, his administrators, executors, or assigns, on the endowment date, July 12, 1949, or on receipt of proof of the death of the insured during the continuance of the policy. On the face of the policy was the provision: "This policy is without privilege of change of beneficiary"; and paragraph 28 of the policy read as follows:

"28. Change of Beneficiary. Unless it is stated on the first page hereof that the policy is without privilege of change of beneficiary the insured, without the consent of any beneficiary, may exercise every right and receive every benefit reserved to the insured, or the owner of the policy, or agree with the Company to any change in or amendment to the policy, and shall have the right at any time to change the beneficiary by written notice to the Company at the Home Office, for which a form will be furnished on request."

If there had been no mistake in issuing the policies in this form, it is clear that their proceeds could not have been included in the decedent's gross estate, since he had retained no interest in or control over the insurance the termination of which by his death could operate as an effective transfer. Pennsylvania Co. v. Commissioner, 3 Cir., 79 F.2d 295, certiorari denied Helvering v. Pennsylvania Co., 296 U.S. 651, 56 S.Ct. 310, 80 L.Ed. 463; see Chase Nat. Bank v. United States, 278 U.S. 327, 338, 49 S. Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388. But there was a mistake which the insured and the insurer attempted to correct by attaching to each policy a rider "agreement" dated May 20, 1924 but not accepted by the insurance company until September 8, 1924. This rider, signed by the insured, reads:

"I hereby give notice of change of beneficiary and election of settlement option under the above described policy and request payment of the net sum payable under the said policy in the event of the death of the insured as follows: * * *" There follow provisions for retention of the net sum by the company and for the payment at specified times of the interest thereon and the principal thereof to the son. The final paragraphs of the rider read as follows:

"In the event my said son survives me but dies before attaining the age of thirty-five years, the amount due at his death shall be paid to his executors, administrators, or assigns.

"In the event I survive my said son, said net sum shall be paid to my executors, administrators, or assigns.

"Except as hereinbefore provided, no benefit accruing to any beneficiary under this agreement shall be transferable, or subject to commutation or encumbrance, or to legal process."

The appellant contends, as point one, that the rider agreement is not a legally operative part of the policy, because the infant beneficiaries did not, and could not, consent thereto; and, as point two, that even if the rider is legally operative the proceeds of the policy are not includible in the insured's estate because at the time of his death the insured did not possess any incidents of ownership in the policy.

The facts regarding issuance of the policy and the addition of the rider were found by the district judge as follows: The two Union Central Life Insurance policies were purchased by the insured in furtherance and as a part of a comprehensive general insurance trust fund plan then being arranged to meet his requirements. The policies were issued in their original form at the instance of the writing agent of the company, because he realized that the insurance company would not issue a policy containing the language necessary to cover the insured's "trust fund plan", which was known to and well understood by the agent, and it was intended to have settlement option papers covering such plan after the policy was issued and accepted, which, in order to express the full intention of the insured, the company's agent knew would require additional agreements relating to the settlement option to be prepared, signed by the insured, and accepted by the company. This could only be accomplished legally if the right to change the beneficiary had been reserved. The writing agent of the company knew the wishes of the insured and chose the procedure to be followed to give effect thereto; he intended to have the insurance contracts prepared and delivered, and further intended to amend them by making substantial changes therein. The insured had knowledge of the procedure used, for he was a party to it. When the policies were issued and delivered, the insured had the option of accepting or rejecting them. He accepted them. After the issuance of the policies, and in order to conform them to his wishes and insurance plan, the insured attempted to exercise the right given to the owner of the policy (under paragraph 34) to elect a "Settlement Option" by executing the rider agreements already described.[1] The agreements are dated May 20, 1924, and are signed by the insured; they were accepted by the insurance company, by the signature of an assistant secretary, on September 8, 1924. Since the death of the insured, payments of the proceeds of each of the policies have been, and are being, made in accordance with these agreements.

Although the trial court's findings of fact do not expressly state that the reservation of the privilege to change the beneficiary was omitted by mistake from the policies as originally issued, his opinion on reargument says that "The erroneous form of the application may have been the fault of the writing agent." And the mistake is clearly conceded in the letter of Charles B. Knight, General Manager of the insurer, which was received in evidence by stipulation as supplementing the agreed facts.[2] Such mistake gave the insured the

---

[1] The district judge's finding of fact was that "the decedent, insured, as owner (under paragraph 34) exercised his right to elect a 'Settlement Option' * * *." Except for the element of mistake hereafter discussed, we do not think the insured could be considered "owner" of the policy. Cf. paragraph 28 quoted above.

[2] The material portions of the letter read as follows:

"I have gone over, with Mr. Mabie, the question of the Settlement Option form desired on the 2 above numbered policies. We have discovered that a mistake was made in the application. This insurance is part of the large case written recently

right to obtain reformation of the policy to conform it to the actual contract of insurance. As Mr. Justice Miller said in Williams v. North German Ins. Co., C. C. Iowa, 24 F. 625, 626:

" * * * Where an instrument fails to represent what both parties intended to have it represent, and one party had drawn up the instrument, and the other party merely accepted it, and the fault was on the part of the party drawing up the instrument, it can be reformed. It would be a harsh rule if a person applying to an insurance agent, who is supposed to know the legal value of the language used in such policies, which he is drawing up every day, and who is supposed to know exactly what is desired, if that agent fails to do that which was intended, it would be harsh to say that the instrument shall not be reformed, and that chancery shall not give relief."

In Ulman v. Equitable Life Assurance Soc., 161 App.Div. 708, 146 N.Y.S. 696, appeal dismissed, 213 N.Y. 700, 108 N.E. 1110, the plaintiff intended an endowment policy payable to herself. By mistake of the agent and contrary to her instructions, the policy was made payable to her husband on the condition that he survive until 1921. The court reformed the contract so as to make the plaintiff sole beneficiary, as she had originally intended. In Goldsmith v. Union Mutual Life Ins. Co., 41 Hun 641, 18 Abb.N.C. 325, appeal dismissed 110 N.Y. 628, 17 N.E. 871, the insured brought an action to reform two insurance policies which read "for the sole and separate use and benefit of his wife, Lina Goldsmith; but in case of her previous death, to revert to the insured." The plaintiff asked the court to reform the contracts by inserting a proviso "that in case the said Lina Goldsmith should cease to be the wife of the

plaintiff during his lifetime, and the marriage between her and the plaintiff should be dissolved by reason of her adultery, then in such case the benefit of the policies should revert to the said plaintiff"; and the relief asked was granted. See also Snell v. Insurance Co., 98 U.S. 85, 25 L.Ed. 52; National Reserve Ins. Co. v. Scudder, 9 Cir., 71 F.2d 884; German Fire-Ins. Co. v. Gueck, 130 Ill. 345, 23 N.E. 112, 6 L.R.A. 835; Bosse v. Bosse, 248 Ky. 11, 57 S.W.2d 995; Woodfin v. Neal, 16 Tenn.App. 481, 65 S.W.2d 212; 29 American Jurisprudence, Insurance §§ 240-257. The riders in the present case provide that they are made "in pursuance of and governed by the laws of the State of Ohio * * *" We are convinced that the Ohio courts follow the general law in reforming an insurance contract. See Globe Insurance Co. v. Boyle, 21 Ohio St. 119; see also Graham & Buckingham v. Fireman's Insurance Co., 2 Disney 255, 13 Ohio Dec. 157; Mitchell and Mitchell v Ætna Ins. Co., 4 Ohio Nisi Prius 386; Falkenberg v. Industrial Fire Ins. Co., 53 Ohio App. 481, 5 N.E.2d 935.

In reforming an instrument the court does not change the terms of the contract made by the parties; it merely declares what those terms were, that is, it makes the writing express the real agreement or intention of the parties. See Restatement, Contracts 504(c); 45 American Jurisprudence, p. 584, § 2. Hence a decree reforming the policies here involved would in no way impair rights of the infant beneficiary, since his rights were only such as the actual contract gave him, namely, rights under a contract in which the privilege was reserved to change the beneficiary and elect a settlement option so that the insurance should accord with the trust fund plan presented to the company's agent. This being so we see no reason why the

---

and placed by Mr. Mabie and was all sold and accepted on the trust fund plan.

"Mr. Mabie worked out a schedule providing for the family of Mr. Schongalla and providing for the establishing of a trust fund and the distribution of the proceeds. He realized that the Company would not issue a policy giving all of the wording in the policy itself and as he had previously done expected to have Settlement Option papers prepared, after policies were issued and accepted. He did not for a moment realize that on the application for these two policies the right was not reserved to change the beneficiary. These policies can not be accepted on their pres-

ent basis. It is entirely aside from the manner in which the insurance was sold. Mr. Mabie stands ready to make affidavit to that fact. It will knock out entirely the program accepted and furnished for the insured who is now one of the largest policy holders with the Company. These facts are positive and I know them to be the truth.

"We know that upon reviewing this situation you will be most happy to prepare papers which you may date the same date as the application for they were as much a part of the original application and desire of the insured as the application itself."

insured and insurer should not themselves accomplish the reformation without resorting to a court proceeding. Consequently we believe the rider was legally operative. Cf. Daugherty v. Curtis, Iowa, 97 N.W. 67.

But if we are wrong as to this and effective reformation could only be had by a court proceeding, the appellant's position would not be better, for at any time before his death the insured by bringing such a suit could have obtained a decree that the actual contract of insurance made by the parties required the proceeds to be paid in accordance with the terms set forth in the rider. In a suit upon the contract of insurance, where such procedural right to reform the policy exists, the courts often give the same relief as though a decree of reformation had actually been obtained. Ætna Insurance Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057, 2 L.R.A.,N.S., 548, 13 Ann.Cas. 1020. See also Stevens Institute of Technology v. Sheridan, 30 N.J.Eq. 23. We see no reason why this principle should not be applied in litigation involving the taxability of the insurance.

In either view, therefore, we reach the question whether such a contract of insurance is taxable to the insured's estate because of the possibility that the proceeds might have been paid to his estate by reason of his surviving the named beneficiary. On this issue little need be said. An affirmative answer is required by our decision in Chase Nat. Bank v. United States, 2 Cir., 116 F.2d 625. See also Commissioner v. Washer, 6 Cir., 127 F.2d 446, certiorari denied 317 U.S. 653, 63 S.Ct. 49, 87 L.Ed. 525; Bailey v. United States, 31 F.Supp. 778, 90 Ct.Cl. 644; Goldstone v. United States, 2 Cir., 144 F.2d 373, certiorari granted 65 S.Ct. 675; Liebmann v. Hassett, 1 Cir., 148 F.2d 247.

The insured's executor also seeks to recover taxes based on including the proceeds of two other policies held by the decedent. One of these was issued by the Metropolitan Life Insurance Company in 1903. It named the decedent's mother, Minna Schongalla, as beneficiary "if living, otherwise to the legal representatives of the insured." Clearly, by its terms this policy gave to the insured a possibility of reverter and so is taxable under our decision in Chase Nat. Bank v. United States, supra.

The other policy, issued by the Metropolitan Life Insurance Company, 1892, was of the so-called "industrial" type. No named beneficiary was designated therein. It provided for a weekly premium payment, and contained a "facility of payment" clause permitting payment by the company of the proceeds of the policy to either the executor or administrator, husband or wife, or any relative by blood or lawful beneficiary of the insured. It provided that after it had been in force for five years, the insured could obtain a paid-up term policy payable to his estate. The insured never exercised this option. It may be that had not the option been included in the policy, the proceeds could not be taxed as part of the deceased's gross estate. See French v. Lanham, 61 App.D. C. 56, 57 F.2d 422. But the existence of the option, which he could have exercised up to the time of his death gave the insured a right to the money which was not terminated until he died. This right is again analogous to a possibility of reverter and is therefore taxable under the statute.

Appellant argues that even if the two Metropolitan life Insurance Company policies would ordinarily be taxable under the statute, application of the tax laws to these policies, issued before the enactment of an estate tax covering insurance policies, would violate the Federal Constitution. We cannot agree. § 811(h) Int.Rev. Code; Liebmann v. Hassett, 1 Cir., 148 F. 2d 247; Bodell v. Commissioner, 1 Cir., 138 F.2d 553, 150 A.L.R. 1262, certiorari denied 321 U.S. 778, 64 S.Ct. 619, 88 L.Ed. 1071; Paul, Federal Estate and Gift Taxation 10.06. See also Reinecke v. Northern Trust Co., 278 U.S. 339, 345, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Chase Nat. Bank v. United States 278 U.S. 327, 338, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565.

The judgment dismissing the complaint is affirmed.