

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 21, 2016 Session

# GARY VOIGT v. MICHAEL A. PLATE[1] ET AL.

**Appeal from the Circuit Court for Hamilton County**
No. 13C374      John B. Bennett, Judge

_____

## No. E2016-00473-COA-R3-CV

_____

In this personal injury and contract reformation case, the plaintiff filed a complaint, seeking damages resulting from a motor vehicle collision and reformation of a release of all claims signed by the plaintiff. As grounds for reformation, the plaintiff claimed that an agent of the defendant company fraudulently induced the plaintiff to sign the release. The defendant filed a motion for summary judgment, asserting that the plaintiff could not establish an essential element of his action because the plaintiff did not act promptly in seeking reformation of the release. The trial court granted summary judgment in favor of the defendant upon finding, as a matter of law, that the plaintiff's action was not prompt after discovery of the alleged fraud and that the plaintiff therefore was not entitled to reformation of the release. The plaintiff timely appealed. Having determined that the question of whether the plaintiff's actions were sufficiently prompt in seeking the equitable relief of reformation presents a genuine issue of material fact, we reverse the trial court's grant of summary judgment in favor of the defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and RICHARD H. DINKINS, JJ., joined.

Danny R. Ellis, Chattanooga, Tennessee, for the appellant, Gary Voigt.

---

[1] Mr. Plate is referred to in various parts of the record as both "Michael A. Plate" and "Michael A. Pate." The trial court's final order identified Michael A. Plate in the style of the case. We will therefore refer to the appellee as "Michael A. Plate" or "Mr. Plate" throughout this opinion. We further note that Mr. Plate was never served with process, was not a party to the trial court proceedings, and is not a party to this appeal.

K. Stephen Powers and Travis B. Holly, Chattanooga, Tennessee, for the appellee, J.B. Hunt Transport, Inc.

## OPINION

The instant action arises from an automobile accident occurring on March 13, 2012, in Hamilton County.  The plaintiff, Gary Walter Voigt, filed his complaint against Michael Plate and J.B. Hunt Transport, Inc. ("J.B. Hunt") on March 7, 2013, seeking damages for the injuries Mr. Voigt sustained in the motor vehicle collision.  Mr. Voigt later amended his complaint to request reformation of a release of all claims he signed in connection with an early settlement with J.B. Hunt.

There appears to be no dispute that Mr. Plate operated a semi-trailer truck in the scope of his employment with J.B. Hunt at the time of the accident.  According to Mr. Voigt's complaint, the accident occurred when Mr. Plate's "semi-trailer jackknifed" and "violently slammed into Mr. Voigt's vehicle," which "caus[ed] [Mr. Voigt] to lose control and slam into the barrier wall."  Mr. Voigt was allegedly injured in the collision and was transported to the emergency room at Memorial Hospital by his wife.  While at the scene of the collision, Mr. Plate presented Mr. Voigt with a document purportedly releasing J.B. Hunt from all liability for the collision.  Mr. Voigt refused to sign the document.

On the day of the accident, J.B. Hunt hired an investigator, Harry Gilbert Jones, to investigate the collision and Mr. Voigt's claimed damages.  Mr. Jones immediately contacted Mr. Voigt on March 13, 2012, and discussed a settlement between J.B. Hunt and Mr. Voigt. During negotiations, Mr. Jones wrote down items discussed concerning the settlement, which included:

| | |
|---|---|
| Value of Vehicle: | $8,675.00 |
| Lost Wages ($200.00 per day for three days): | 600.00 |
| Vehicle Rental: | 510.00 |
| Total: | $9,785.00 |

Following the discussions, Mr. Jones authorized payment of Mr. Voigt's wrecker service bill of $228.70 on behalf of J.B. Hunt.  According to the proposed settlement, Mr. Voigt would be allowed to retain the salvage value of his vehicle.  It is undisputed that Mr. Jones did not inquire regarding the amount of Mr. Voigt's medical bills or any necessary follow-up treatment resulting from the injuries sustained in the collision.  However, Mr. Jones was aware that Mr. Voigt was injured during the collision and that Mr. Voigt had been to the hospital for treatment of those injuries.

- 2 -

According to Mr. Voigt's deposition testimony, Mr. Jones rounded the settlement amount to $10,000.00 to settle the property damage portion of the claim while leaving the personal injury claim open. To reach the $10,000.00 settlement, Mr. Jones testified that he allocated the remaining $215.00 as payment for "personal injury," without discussing it with Mr. Voigt, because he "needed to put something down in [his] report to [J.B. Hunt] to get the $10,000." Mr. Jones further explained that he did not present the negotiation report to Mr. Voigt and did not discuss with Mr. Voigt that the $215.00 would be allocated toward his personal injury claim.

Ultimately, Mr. Voigt and J.B. Hunt reached an agreement that J.B. Hunt would pay $10,000.00 to Mr. Voigt. On March 15, 2012, Mr. Voigt and his wife, Ruth Angela Voigt, signed a document captioned, "RELEASE OF ALL CLAIMS," releasing J.B. Hunt and Mr. Plate

> from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which [Mr. and Ms. Voigt] now has . . . or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 13th day of March 2012 . . . . .

According to Mr. Voigt, he understood that he was only signing a release for claims regarding lost wages, property damage, and a rental car, believing that the personal injury portion of his claim would remain open. Mr. Voigt acknowledged reading the release prior to signing it but indicated that he did not understand that the release would preclude his personal injury and medical claims. Mr. Voigt testified that prior to signing the release, Mr. Jones informed him: "Regardless of what we sign, J.B. Hunt is still responsible for your medical expenses." Mr. Voigt further testified that he had relied on Mr. Jones's statements regarding the meaning of the release when he made the decision to sign it. In his deposition, Mr. Jones stated that Mr. Voigt did not at any time explain that he wished not to settle his personal injury or medical claims. Mr. Jones insisted that the settlement included all claims.

Ms. Voigt executed an affidavit, stating that she was present during the negotiations. She confirmed that an individual employed by J.B. Hunt informed her and her husband that J.B. Hunt would remain liable for Mr. Voigt's medical expenses and that the release was only applicable to Mr. Voigt's property damage claims. Relative to the release, Criswell Claim Services issued a check to Mr. and Ms. Voigt, on behalf of J.B. Hunt, in the amount of $10,000.00. The check included a notation reflecting: "FULL AND FINAL SETTLEMENT." The Voigts deposited the funds into their account at Chattanooga Federal Employees Credit Union.

In his deposition, Mr. Voigt further testified that he was contacted by a claims adjuster employed by his automobile insurance carrier, State Farm Insurance Company ("State Farm"), in April 2012, approximately three weeks following the accident. The claims adjuster stated that she was having difficulty contacting Mr. Jones. At her request, Mr. Voigt faxed the adjuster a copy of the signed release. The insurance adjuster then informed Mr. Voigt that State Farm would no longer cover any past or future medical expenses that Mr. Voigt incurred resulting from the collision because the signed release jeopardized State Farm's ability to seek subrogation against J.B. Hunt for such medical expenses. Mr. Voigt related that he spoke to Mr. Jones following his conversation with the adjuster and explained to Mr. Jones how his insurance coverage had been affected by the release. According to Mr. Voigt, during a conference telephone call including Mr. Voigt, the adjuster, and Mr. Jones, Mr. Jones informed both Mr. Voigt and the adjuster that J.B. Hunt was still responsible for Mr. Voigt's medical bills and directed State Farm to send Mr. Voigt's medical bills to him so he could forward them to J.B. Hunt. Mr. Jones did not recall such a telephone conference occurring. Both Mr. Voigt and Mr. Jones testified that State Farm sent Mr. Voigt's medical bills to Mr. Jones and that Mr. Jones forwarded them to J.B. Hunt.

Mr. Jones provided Mr. Voigt with contact information for a representative at J.B. Hunt to discuss payment of the medical expenses. Mr. Voigt testified that he contacted the J.B. Hunt representative, who informed him that "it was very unusual for somebody to send [J.B. Hunt] medical bills after a settlement is signed" but that J.B. Hunt would consider the medical bills and whether to pay them. According to Mr. Voigt, that was the final conversation he had with a representative of J.B. Hunt. Thereafter, in May 2012, Mr. Voigt obtained legal counsel.

Mr. Voigt subsequently filed the instant action on March 7, 2013, seeking damages for personal injuries resulting from the motor vehicle collision. Specifically, Mr. Voigt averred that Mr. Plate violated motor vehicle traffic laws, failed to exercise due care, and was liable under theories of common law negligence and negligence *per se*. Mr. Voigt sought damages in the amount of $250,000.00. On April 15, 2013, J.B. Hunt filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), asserting that Mr. Voigt had failed to state a claim on which relief could be granted because he was not entitled to recovery due to the previously signed release. On June 7, 2013, Mr. Voigt responded in opposition to the motion to dismiss, alleging that he was fraudulently induced into signing the release and requesting reformation of the release document.

Upon Mr. Voigt's motion, the trial court subsequently entered an order granting permission to amend the complaint. Filing his amended complaint on June 26, 2013, Mr. Voigt requested reformation of the release on the basis of Mr. Jones's fraudulent misrepresentations, which purportedly induced Mr. Voigt to execute the release. Mr.

Voigt requested reformation of the release such that "the terms that only the value of the car, lost wages, and rental fees [would be] released." On July 15, 2013, J.B. Hunt filed an answer to Mr. Voigt's amended complaint, denying the additional allegations. J.B. Hunt contended that Mr. Voigt was not prompt in seeking contract reformation after his discovery of the alleged fraud and that Mr. Voigt failed to tender back to J.B. Hunt the proceeds received in exchange for executing the release.

On December 19, 2013, J.B Hunt filed a motion for summary judgment, asserting that Mr. Voigt could not prove an essential element of his action because he had failed to seek prompt relief when he received notice of the alleged fraud, thereby precluding him from being granted reformation of the contract. J.B. Hunt also claimed that Mr. Voigt's failure to return the consideration paid prevented his claim for reformation.

Following a hearing conducted on January 11, 2016, the trial court ruled in favor of J.B. Hunt's motion for summary judgment. On February 4, 2016, the trial court entered an order granting summary judgment based on the court's determination that J.B. Hunt had successfully negated an essential element of Mr. Voigt's claim for reformation. Specifically, the trial court found that "prompt action to point out a mistake of fact or fraud in the inducement of the Release of All Claims and to seek reformation is an essential element of [Mr. Voigt's] action for reformation." The trial court further concluded as a matter of law that Mr. Voigt had not acted promptly upon discovering the fraud as required for contract reformation. In its order, the trial court specifically noted its decision not to consider the presence or absence of prejudice to J.B. Hunt relative to the determination that Mr. Voigt's actions were not prompt as a matter of law. The court further concluded that the issue of whether Mr. Voigt should have returned the $10,000 he received as part of the agreement had been pretermitted. Mr. Voigt timely appealed.

## II. Issues Presented

Mr. Voigt presents two issues for our review, which we have restated as follows:

1. Whether the trial court erred by granting summary judgment in favor of J.B. Hunt based on the court's determination that Mr. Voigt failed to promptly file an action seeking reformation of the release contract.

2. Whether the trial court erred in declining to address Mr. Voigt's allegations that Mr. Jones, on behalf of J.B. Hunt, committed fraud requiring reformation of the contract.

J.B. Hunt presents an additional issue for review, which we have also restated slightly:

- 5 -

3. Whether Mr. Voigt's failure to comply with Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Appeals Rule 6(b) has effectively waived the issues he has presented for review.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of

the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Deficiencies in Mr. Voigt's Appellate Brief

As a threshold matter, J.B. Hunt contends that the issues presented for review in Mr. Voigt's principal brief should be deemed waived because his brief fails to meet the requirements provided in Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Appeals Rule 6(a). Tennessee Rule of Appellate Procedure 27 states in pertinent part:

(a)   Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

* * *

(7)   An argument, which may be preceded by a summary of argument, setting forth:

(A)   the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

> (B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues) . . . .

Similarly, Tennessee Court of Appeals Rule 6(b) provides in pertinent part:

> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Although Mr. Voigt included only one citation to the record on appeal in the argument section of his principal brief, he provided several citations to the record in both the statement of the case and statement of facts within his brief.

As this Court has previously explained with regard to deficiencies in an appellate brief:

> Our Courts have "routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised]." *Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In *Bean,* we went on to hold that "an issue is waived where it is simply raised without any argument regarding its merits." *Id.* at 56; *see also Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As we stated in *Newcomb,* a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb,* 222 S.W.3d at 400. It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument. *Bean,* 40 S.W.3d at 56.
>
> Despite the fact that [the appellant's] brief is woefully inadequate, there are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.

*Chiozza v. Chiozza*, 315 S.W.3d 482, 487-489 (Tenn. Ct. App. 2009).

In the case at bar, although the argument section of Mr. Voigt's brief fails to fully satisfy the requirements of Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Appeals Rule 6(b), we determine that this is an appropriate case in which to exercise our discretion to waive the briefing requirements in order to adjudicate the issues presented for review. *See* Tenn. R. App. P. 2.

## V. Reformation of Release

A release is a contract, and "rules of construction applied to contracts are used in construing a release." *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). Regarding the reformation of contracts, this Court has articulated as follows:

> [I]t is well settled that the courts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain. The courts are also empowered to modify the provisions of a written contract where only one of the parties was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud.
>
> The judicial alteration of the provisions of a written agreement is an equitable remedy known as "reformation." The basic purpose of reformation is to make the contract "conform to the real intention of the parties." It is "driven by a respect for the parties' intent and gives effect to the terms mutually agreed upon by the parties." Because the law strongly favors the validity of written instruments, a person seeking to reform a written contract must do more than prove a mistake by a preponderance of the evidence. Instead, the evidence of mistake must be clear and convincing.

*Sikora v. Vanderploeg*, 212 S.W.3d 277, 286-88 (Tenn. Ct. App. 2006) (footnotes and citations omitted).

In order to seek reformation on the basis of fraud of another, the fraud must exist when the document is executed and may be either actual or constructive. *Woodfin v. Neal*, 65 S.W.2d 212, 216 (Tenn. Ct. App. 1933). Additionally, this Court has explained the meaning of fraud or inequitable conduct that would justify contract reformation in relevant part as:

> Inequitable conduct, to warrant relief by way of reformation has been held to consist in doing acts, or omitting to do acts, which the court finds to be

unconscionable; as, in taking advantage by one party of the other party's illiteracy, in abusing confidence, in concealing what of right should have been disclosed, in drafting or having drafted an instrument contrary to the previous understanding of the parties and permitting the other party to sign it without informing him thereof, inducing the other party to believe the instrument other than it actually is . . . or in taking advantage of a mistake of the other party, known or suspected at the time, or the result of importunity.

*Id.* This Court has also recognized that "the issue of reformation is not one generally suited for summary disposition . . . ." *See Decatur Cnty. Bank v. Duck*, 969 S.W.2d 393, 398 (Tenn. Ct. App. 1997). Having considered the applicable law regarding Mr. Voigt's claim for contract reformation, we shall address each issue presented in turn.

## A. Promptness of Mr. Voigt's Action

Mr. Voigt contends that the trial court erred by determining, as a matter of law, that Mr. Voigt did not promptly seek reformation of the release upon his discovery of the alleged fraud. Upon this determination, the trial court concluded that acting promptly in seeking reformation was an essential element of an action for reformation. The trial court stated through an oral ruling: "J.B. Hunt's motion for summary judgment would be granted on the basis of there was no prompt action as a matter of law on the reformation claim." Thereafter, the trial court entered a final judgment on February 4, 2016, finding, *inter alia*, as follows:

> The Court has gone through each of the facts admitted by the parties, which are the facts found by the Court to be material to J.B. Hunt's motion, and laid them out and has gone through the legal authorities cited by the parties to arrive at its conclusions of law. The Court finds that prompt action to point out a mistake of fact or fraud in the inducement of the Release of All Claims and to seek reformation is an essential element of [Mr. Voigt's] action for reformation. The Court finds that [Mr. Voigt's] assertion of fraudulent inducement and his action seeking reformation were not as a matter of law prompt. Thus, [Mr. Voigt] cannot establish an essential element of his cause of action seeking reformation, and J.B. Hunt's Motion is due to be granted on that ground as a matter of law.

> In reaching its conclusion, the Court has not been directed to any case law holding that prejudice for a lack of promptness in seeking reformation is a factor to be considered, and the Court has not found any such legal authority. Promptness is an essential element that [Mr. Voigt] must establish to bring the action. Thus, the presence or absence of prejudice to J.B. Hunt from [Mr. Voigt's] failure to raise fraud in the

- 10 -

inducement and seek reformation promptly has not been considered by the Court. Likewise, the Court has not considered J.B. Hunt's contention that [Mr. Voigt] must have tendered-back the $10,000 he received as a condition precedent to bringing the action for reformation. The Court finds that the tender-back issue has been pretermitted by the Court's finding that [Mr. Voigt] cannot establish an essential element of his cause of action for reformation based upon his failure to point out the alleged fraud in the inducement and seek reformation promptly.

The Court finds that there are no genuine issues of material fact relating to J.B. Hunt's Motion and that J.B. Hunt is entitled to have its Motion granted as a matter of law.

Upon careful review, we disagree and determine that a genuine issue of material fact exists regarding Mr. Voigt's promptness in seeking reformation of the release.

Tennessee courts have held that a plaintiff must act with promptness when seeking reformation of a document on the basis of fraud. *See Graham v. Guinn*, 43 S.W. 749, 753 (Tenn. Ct. App. 1897); *see also Dairy Gold, Inc. v. Thomas*, No. 03A01-9901-CH-00019, 1999 WL 1068701, at *6 (Tenn. Ct. App. Nov. 29, 1999) (affirming a trial court's denial of rescission of a lease due to the plaintiff's lack of promptness in applying for rescission).[2] "As to what delay would make it incumbent upon the court to deny relief, it cannot be determined by any set rule, but must be determined upon the facts and circumstances of each particular case." *Graham*, 43 S.W. at 753. As such, a determination of what is considered "prompt" regarding filing for contract reformation requires a consideration of the specific circumstances of each case.

In the action at bar, Mr. Voigt executed the release on March 15, 2012. Mr. Voigt insisted that Mr. Jones affirmatively stated to him that J.B. Hunt would still be responsible for his medical bills even if he signed the release. Ms. Voigt's affidavit, executed on June 7, 2013, corroborates Mr. Voigt's testimony that an individual employed by J.B. Hunt assured Mr. Voigt that the release did not include Mr. Voigt's medical expense claims.

We note that because this is a summary judgment proceeding, we must examine the evidence presented in a light most favorable to Mr. Voigt when determining whether the trial court erred in granting summary judgment in favor of J.B. Hunt. *See Meyers v. First Tenn. Bank, N.A.*, 503 S.W.3d 365, 384-85 (Tenn. Ct. App. 2016) ("When reviewing a motion for summary judgment, '[w]e must view the evidence in the light

---

[2] This Court in *Graham* recognized that the principle of what is considered to be sufficiently prompt is the same in reformation cases as it is in actions seeking rescission. *See Graham*, 43 S.W. at 753.

- 11 -

most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor.'") (quoting *Thomas v. Carpenter*, No. M2005-00993-COA-R9-CV, 2005 WL 1536218, at *2 (Tenn. Ct. App. June 29, 2005)).

During a conversation with an adjuster from State Farm in April 2012, approximately three weeks after signing the release, Mr. Voigt was first advised that the release he had signed jeopardized State Farm's subrogation rights. According to Mr. Voigt, a conference call followed during which Mr. Jones requested the medical bills and reassured Mr. Voigt and the adjuster that J.B. Hunt remained liable for such expenses. Accordingly, Mr. Voigt's medical bills were sent to Mr. Jones who, in turn, forwarded the medical expenses to J.B. Hunt. After J.B. Hunt had received the medical bills, Mr. Voigt spoke with a representative of J.B. Hunt who nonetheless stated that "it was very unusual for somebody to send [them] medical bills after a settlement is signed." Following this conversation, Mr. Voigt sought legal representation in May 2012, filing the present action against the J.B. Hunt in March 2013. In his response to J.B. Hunt's motion to dismiss, Mr. Voigt claimed that he had been induced by fraud when signing the release. Mr. Voigt subsequently amended his complaint in June 2013 to seek reformation of the release on the basis that he was fraudulently induced into signing the release by J.B. Hunt's agent.

Precedent has not established a bright-line rule for what is considered prompt in seeking reformation. *See Pearsons v. Washington Coll.*, 172 S.W. 314, 316 (Tenn. 1914) ("Every case turns largely upon its own facts."). In *Graham*, this Court determined that a plaintiff's actions were prompt in seeking reformation after approximately ten months, based on the factual circumstances of that case. *Graham*, 43 S.W. at 754. In an early rescission action, our Supreme Court determined that a six-year delay did not preclude a plaintiff from seeking rescission of a contract for a continuing construction project. *See Donelson v. Weakley*, 11 Tenn. 178, 199 (1832). However, when analyzing a different set of facts, this Court more recently determined that a "several year delay" of approximately five and a half years was not sufficiently prompt to seek rescission. *See Dairy Gold, Inc.*, 1999 WL 1068701, at *6.

In *Walker v. Walker*, 2 Tenn. App. 279, 290 (1925), a plaintiff waited eighteen months before her husband's death and another eighteen months following his death, or a total of thirty-six months, prior to filing an action for reformation of a deed. During the eighteen months following her husband's death and prior to filing her action, the plaintiff accepted a deed for a life estate to the property at issue. *Walker*, 2 Tenn. App. at 290. Although *Walker* was ultimately decided on a separate basis, our Supreme Court criticized the plaintiff's delay in waiting thirty-six months to seek reformation and accepting a life estate to the property from his heirs. *Id*. The *Walker* Court further discussed that a party who acquiesces in an instrument has lost the right to seek reformation. *Id*.

The record reflects that Mr. Voigt learned of the alleged fraud in approximately April 2012 and sought legal representation in May 2012. Mr. Voigt filed an action against J.B. Hunt and Mr. Plate in March 2013. In June 2013, Mr. Voigt amended his complaint to seek reformation of the release. Therefore, at most, Mr. Voigt's course of action constituted a delay of approximately fourteen months.

Upon our careful review of the record, we determine that, taken in a light most favorable to Mr. Voigt as we must at this stage of the proceedings, Mr. Voigt has presented evidence sufficient to create a genuine issue of material fact as to whether he acted promptly in seeking reformation of the release. Therefore, we reverse the trial court's grant of summary judgment in favor of J.B. Hunt.

### B. Fraud in the Inducement

Mr. Voigt argues that Mr. Jones, as an agent of J.B. Hunt, committed fraud upon Mr. Voigt in order to induce him to sign the release. As such, Mr. Voigt is requesting that this Court reverse the trial court's judgment and remand to the trial court with instructions to reform the contract. Because the trial court granted summary judgment in favor of J.B. Hunt upon its determination that Mr. Voigt was not prompt in seeking relief, the trial court did not reach the issue of whether Mr. Voigt was influenced by fraud when he signed the release. Inasmuch as the trial court did not address the issue, we conclude that the issue of whether Mr. Jones, as an agent of J.B. Hunt, fraudulently induced Mr. Voigt into signing the release is not properly before this Court on appeal of the grant of summary judgment. *See Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts[.]").

### VI. Conclusion

For the reasons stated above, we reverse the trial court's grant of summary judgment in favor of J.B. Hunt. We remand this matter to the trial court for further proceedings consistent with this opinion and collection of costs below. Costs on appeal are taxed to the appellee, J.B. Hunt Transport, Inc.

_____
THOMAS R. FRIERSON, II, JUDGE